UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

PETER JOAQUIN FLORES

                  Plaintiff,

     v.

MICHAEL J. ASTRUE
Commissioner of Social Security,

                  Defendant.

Case No.: 3:11-CV-03050-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

    Plaintiff Peter Joaquin Flores ("Flores") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-83(f) (2011). This court has jurisdiction to review the Commissioner's

decision pursuant to 42 U.S.C. § 405(g).  After reviewing the record, this court recommends affirming the ALJ's decision to deny benefits.

*Factual Background*

Flores is a thirty-seven year old man who currently lives in Ashland, Oregon with his girlfriend and teenage son.  Flores attended special education classes throughout his formal schooling, but dropped out of high school when he was eighteen.  Tr. at 259.  Despite taking several classes at a community college, he was unable to obtain his GED.  Tr. at 259.

Between 1994 and 2004, Flores worked at thirteen different jobs.  Tr. at 148.  Almost all of Flores's jobs were short-term – lasting between one week and two months each.  Tr. at 148, 202-209.  On his Social Security work history report, Flores indicated he was laid off or fired from most of his jobs because he had trouble completing forms and written reports.  Tr. 202-209.  The only job Flores held for a significant period was as a dishwasher at Pathway Enterprises.  Flores worked as a dishwasher for nearly nine months, but was terminated from this position as well because he had trouble with the dishwashing equipment.  Tr. at 152.

The record contains Flores's medical records from five different sources:  an emergency room visit; Dr. Brent Shields, Ph.D. ("Dr. Shields"); Dr. Minhao Zhou, M.D. ("Dr. Zhou"); Dr. Brad Kauder, Psy.D. ("Dr. Kauder"); and Dr .Andrew Kuzmitz, M.D. ("Dr. Kuzmitz").  The emergency room records are of no significance to the disability determination.  During his visit to the emergency room, Flores was diagnosed with shingles, a condition that does not form the basis of Flores's disability claim.  Tr. at 253.

In March of 2007, Dr. Zhou examined Flores in conjunction with Flores's alleged back pain.  Tr. at 290.  Dr. Zhou wrote in his report that Flores's back pain is a constant ache punctuated by

sharp pains, which began after Flores was hit by a car when he was a teenager. Tr. at 290. Flores told Dr. Zhou that he spends "90% of his waking hours on his feet," and is able to climb five flights of stairs without having to rest. Tr. at 290. Flores also told Dr. Zhou that he can do housework, like vacuuming and washing dishes, and that he sometimes does yard work, like mowing the lawn. Tr. at 291. Dr. Zhou observed Flores to be fairly pleasant, able to sit in his chair, take off his shoes and socks without difficulty, and transfer from the chair to examination table without difficulty. Tr. at 291. Despite Flores's subjective complaints of back pain, Dr. Zhou wrote in the diagnosis that there are "no objective findings on [this] exam to support his complaints." Tr. at 293. Dr. Zhou ultimately came to the conclusion that Flores has "no visual, communicative, or workplace environmental limitations." Tr. at 294.

A month later, Flores met with Dr. Shields and underwent a full neuropsychological evaluation. Tr. at 258. The examination consisted of a clinical interview followed by a battery of psychological tests. Tr. at 258. In the interview, Flores denied a history of oppositional-defiance disorder or other personality disorders. Tr. at 259. He did, however, report a history of dyslexia. Tr. at 259.

Dr. Shields observed that Flores's gait and posture appeared normal, and that his "use of language and working vocabulary appears commensurate with expectations for his age and education." Tr. at 260. Flores refused to attempt the "serial 7's" task because of an alleged math deficiency. Tr. at 260. Based on Flores's language and vocabulary during the interview, Dr. Shields estimated that Flores's intellect fell in the low-average range. Tr. at 260. Dr. Shields found that Flores can independently manage his own hygiene, grooming, and dress, and that there are no personality features that would compromise Flores's ability to get along with others at the work

place. Tr. at 262. Dr. Shields also concluded that Flores was not well-suited to adapt to a skilled labor position, but "appear[s] capable, from a cognitive point of view, of understanding, remembering, and carrying out simple instructions to perform routine tasks, such as those found in a number of basic manual labor jobs." Tr. at 262.

Dr. Shields diagnosed Flores as suffering from attention deficit hyperactivity disorder ("ADHD"), a reading disorder, a disorder of written expression, and a mathematics disorder. Tr. at 263. However, he deferred any diagnosis regarding Flores's chronic pain to a medical expert. Tr. at 263. Further, due to Flores's math problems, Dr. Shields recommended Flores rely on a payee in the event he is awarded disability benefits. Tr. at 261.

In May 2008, Flores met with Dr. Kauder to undergo another neuropsychological evaluation. Tr. at 298. The evaluation consisted of an interview and two days of testing. Tr. at 298. Dr. Kauder initially observed that Flores reported no markedly painful conditions, did not exhibit pain behaviors, and had adequate sitting endurance. Tr. at 299. Further, Dr. Kauder noted Flores was able to tolerate the five-hour testing session without loss of attention or mental stamina. Tr. at 299.

Flores's test results varied. Tr. at 301-303. His full scale IQ measured as average – exceeding the 70th percentile. Tr. at 302. However, on the Mini Mental Status Exam, Flores registered within the severely impaired range, being unable to report the correct day of the week, location, or type of building he was in at the time. Tr. at 301. Flores registered as moderately to mildly impaired on attentional functions, average on processing speed, and average in measures of motor speed. Tr. at 301. Further, Dr. Kauder noted, regarding tests of Flores's memory, that "results were variable and, to some extent, did not conform to expected patterns of deficit." Tr. at 302. For example, Flores scored in the mildly impaired range of immediate recall, but performed within

normal limits on a more difficult test of the same ability. Tr. at 302. Finally, the fact that Flores committed only one error during the "serial 7's" test is worth noting, considering Flores refused even to attempt this test when he was examined by Dr. Shields. Tr. at 301.

He determined that Flores has at least average general intellect, intact motor functioning and speed, normal immediate attention, and his processing speed and other intellectual functions were normal. Tr. at 301-03. Dr. Kauder diagnosed Flores as having: (1) a possible reading disorder (dyslexia); (2) possible ADHD; (3) possible mood disorder; and (4) possible anxiety disorder. Tr. at 304. However, Dr. Kauder hedged all four of his diagnoses with the caveat, "certainty about diagnosis is attenuated secondary to empirical measures that call test validity into question." Tr. at 304. Dr. Kauder recommended vocational rehabilitation, counseling, and medication for his possible anxiety and ADHD. Tr. at 304-05.

Flores saw Dr. Kuzmitz, his treating physician, on four occasions from March 2009 to August 2009. Tr. at 307-08. Dr. Kuzmitz's notes from just three appointments appear on the record. Tr. at 307-08. Dr. Kuzmitz's notes from the first session reveal that Flores was anxious initially, and did not appear to have significant depression. Tr. at 307. After the first appointment, Dr. Kuzmitz diagnosed Flores as suffering from a learning disorder, ADHD, and an oppositional disorder, though Dr. Kuzmitz did not perform any objective tests to arrive at these diagnoses. Tr. at 307. On the second visit, Flores complained of back pain. Tr. at 307. Dr. Kuzmitz observed that "the right SI . . . is slightly tender," and that Flores could bend down to mid-tibia, had normal reflexes, and was able to complete the straight leg raise test normally. Tr. at 307. Dr. Kuzmitz prescribed Naprosyn for the swelling, and suggested Flores "keep things in a neutral position", seek chiropractic adjustment if necessary, and start doing abdominal exercises. Tr. at 307. The final appointment note

appearing on the record indicates that Flores came to Dr. Kuzmitz with anxiety problems. Tr. at 308. Dr. Kuzmitz diagnosed Flores as suffering from depression and gave Flores a prescription for an antidepressant. Tr. at 308.

Dr. Kuzmitz also submitted a physical residual functional capacity questionnaire to the Commissioner. Tr. at 309-313. In the questionnaire, Dr. Kuzmitz notes diagnoses of a learning disorder, ADHD, anxiety disorder, oppositional disorder, smoker, chronic back sprain, and depression. Tr. at 309. Further, he indicates that Flores suffers from consistent symptoms every day and would miss more than four days of work per month if Flores held a full time job. Tr. at 312.

Finally, Flores completed a pain questionnaire ("Pain Questionnaire") as part of the application process. Tr. at 197-99. In the questionnaire, Flores claims he has pain in his back, legs, and neck every day. Tr. at 197. The pain, he alleges, is caused by walking, sitting, bending, and kneeling, and goes away when he lays down in bed. Tr. at 197. When he filled out the Pain Questionnaire, he was not seeing a doctor for his pain and took Asprin to treat it. Tr. at 198. Flores claims he is unable to finish household activities, like sweeping, doing dishes, laundry, and cooking, without taking a break. Tr. at 198. He notes that his kids and mother do the household chores around the house, and he can walk one-half mile before resting. Tr. at 199.

*Procedural History*

Flores filed his initial application for SSI and DIB on February 14, 2007, alleging disability from January 1, 1996, to the present. The Commissioner denied Flores's claim initially and again on reconsideration. After a timely request for a hearing, Flores appeared before Administrative Law Judge Bernard J. McKay ("ALJ") on November 10, 2009. Tr. at 15.

At the hearing before the ALJ, Flores testified that he suffered from a learning disability,

depression, anxiety, and chronic back pain – conditions he claimed prevented him from working. Flores did admit, however, that medication helped control his anxiety. Tr. at 36.

Flores's mother, Molly Wetzel ("Wetzel") also testified at the hearing. Wetzel testified that Flores had a learning disorder that caused memory problems and anxiety that manifested itself as anger. Tr. at 62-63. She testified, however, that Flores's anxiety and anger have partially subsided since Flores began taking medication. Tr. at 62. Further, Wetzel claimed she had to help Flores fill out forms and applications because he had trouble reading and writing due to his learning disability. Tr. at 64. Ultimately, the ALJ found Flores was not disabled, and the appeals counsel denied Flores's request for review. Flores filed this appeal on November 28, 2011.

### Summary of the ALJ's findings

As required by 20 C.F.R. § 416.920(4) (2012), the ALJ evaluated Flores's case by going through the five-step "sequential process."

I. Steps One and Two

At step one, the ALJ found that Flores, despite working as a dishwasher for nine months at the substantial gainful activity level in 2001 and 2002, had not engaged in substantial gainful activity since his alleged onset date. Tr. at 17. The ALJ explained that making an authoritative finding on whether Flores's employment as a dishwasher qualified as substantial gainful activity would require further inquiry, and doing so was unnecessary to determine whether Flores was entitled to disability benefits. Tr. at 17.

At step two, the ALJ found that Flores suffers from two severe impairments–learning disorder and depression. Tr. at 17. The ALJ wrote, "psychological testing indicates [Flores] has problems with reading. He has also been diagnosed with a mood disorder." Tr. at 18. The ALJ did

not indicate which doctors' opinions he relied upon in coming to this determination, but the did

determine that Flores suffers from depression due to his diagnoses of adjustment disorder and mood

disorder. The ALJ rejected Flores's allegation that he suffers from ADHD, and notes that, following

Flores's psychological evaluations, Flores's doctors offered the possibility that Flores had ADHD,

but that "this has never been confirmed." Tr. at 18.

In finding that Flores did not suffer from severe back pain, the ALJ relied mainly on the

report of Dr. Zhou. In his report, Dr. Zhou indicated Flores "sat comfortably in a chair and was able

to take his shoes and socks off and move around without difficulty." Tr. at 18. Further, the ALJ

noted that during Dr. Zhou's examination, Flores was able to bend at the waist ninety degrees,

extend to twenty-five degrees, flex laterally to twenty-five degrees, complete the straight leg raise

test without trouble, and had full strength in his upper and lower extremities. Tr. at 18. The ALJ

determined Flores's complaints of back pain were not credible because Flores took only Asprin for

pain control, and although "claimant alleges severe pain for many years, . . . examinations have not

noted any muscle atrophy that would be expected due to decreased use because of pain." Tr. at 18.

The ALJ found Flores's testimony incredible because Flores made inconsistent statements,

exaggerated on psychological testing, and had a minimal work record. Tr. at 20. The ALJ did not

elaborate on Flores's minimal work record, but highlighted several occasions on which Flores

contradicted himself. Tr. at 18-20. First, the ALJ noted that in the Pain Questionnaire, Flores

claimed he could walk only one-half mile before resting, and his kids and mother performed all of

the household chores. Tr. at 18. However, Flores reported to Dr. Zhou that he was able to perform

household chores, including mowing the lawn, he spends 90 percent of his waking hours on his feet,

and he could climb five flights of stairs. Tr. at 18.

The ALJ found that Flores exaggerated on psychological testing on several occasions. First, the ALJ noted that Flores refused to attempt the serial 7's subtraction test because of a math deficit, but at another examination, made only one error when performing the serial 7's test. Tr. at 19-20. Flores also had contradicting results on memory tests. Tr. at 19. These results led Dr. Kauder to note, "[t]he patient obtained scores on empirically derived measures of test validity that call into question the possibility of suboptimal effort and/or frank dissimulation. Moreover, the patient obtained patterns of scores on various cognitive tests that do not make neuropsychological sense." Tr. at 20. As an example, the ALJ cited Kauder's observation that Flores showed impaired performance on one memory test, just to have a performance within normal limits later on a more difficult test of the same ability. Tr. at 20.

The ALJ also gave no credibility to the opinion of Dr. Kuzmitz, whose diagnoses generally supported Flores's allegations. Tr. at 18. The ALJ advanced two reasons for finding Dr. Kuzmitz not credible. Tr. at 18. First, the ALJ found Dr. Kuzmitz's opinion was "based on claimant['s] subjective complaints and no objective medical findings." Tr. at 18. In support of this assertion, the ALJ pointed out that Flores performed the straight leg raise and reflex testing with normal results. Tr. at 18. Nonetheless, Dr. Kuzmitz submitted "a residual functional capacity opinion that prevent[ed] claimant from sustaining work activity." Tr. at 18. Second, the ALJ determined that Dr. Kuzmitz was certified only in family medicine, so his opinions about Flores's mental state were not entitled to credence in the face of contrary diagnoses from mental health care specialists. Tr. at 18-19. Finally, the ALJ noted that Dr. Kuztmitz based his opinion regarding Flores's mental state on inaccurate information proffered by Flores, particularly Flores's representation that in previous psychological evaluations, he was diagnosed with anxiety and oppositional defiant disorder. Tr. at

19.  In fact, Flores denied a history of oppositional defiant disorder in the psychological evaluation

performed by Dr. Shields.  Tr. at 19.

## II.  Step Three

At step three, the ALJ held that Flores does not have an impairment or combination of

impairments that meets or medically equals those listed in the regulations.  Tr. at 19.  Despite his

finding that Flores suffers from depression, the ALJ determined this condition, "does not cause any

interference with activities of daily living."  Tr. at 19.  Also, the ALJ found that, while Flores's

condition mildly impairs his social functioning, Flores has friends that visit, and the doctors' reports

do not indicate any problems with social maladjustment.  Tr. at 19.  Further, the ALJ determined that

Flores has never suffered from episodes of decompensation, and was never hospitalized due to a

mental problem, nor even had any condition treated by a mental health professional.[1]  Tr. at 19.

## III.  Flores's RFC

At step four, the ALJ held that Flores has the residual functioning capacity ("RFC") to

perform work at all exertional levels, subject to the following nonexertional limitations: (1) low

stress; (2) no fast pace work; and (3) no work that involves interacting with the public or interacting

closely with coworkers.  Tr. at 19.

In coming to this determination, the ALJ reviewed all of Flores's symptoms to the extent they

were consistent with the medical evidence.  Tr. at 19.  The ALJ explained that he included the

second and third limitations–low stress work and no interaction with coworkers or the public – due

mostly to testimony by Flores's mother, Molly Wetzel ("Wetzel"), that Flores has anger problems

---

[1]While technically this statement is true, the court must point out that Flores sought treatment
of his depression from Dr. Kuzmitz, who prescribed Flores an antidepressant medication.

and "claimant stating that he did not like to be in crowds." Tr. at 20.

## IV. Step Four

At step four, the ALJ determined that Flores has no past relevant work because it was unclear whether Flores's past work as a dishwasher rose to the level of substantial gainful activity. Tr. at 20.

## V. Step Five

At the final step, the ALJ found Flores capable of performing jobs that exist in significant number in the national and regional economy. Tr. at 21. Answering a hypothetical question posed by the ALJ that included the vocational limitations listed above, the vocational expert testified that Flores could perform the duties of a "laundry worker, cleaner (janitorial), and laundry sorter; jobs that exist in the hundreds to the thousands in the regional economy and the hundreds of thousands in the national economy." Tr. at 21. Accordingly, the ALJ determined Flores was not entitled to disability benefits under the Social Security Act.

### *Discussion*

Flores raises seven allegations of error by the ALJ: (1) the ALJ erred in rejecting Flores's credibility; (2) the ALJ erred in rejecting the testimony of Flores's mother; (3) the ALJ improperly rejected the opinion of Dr. Kuzmitz; (4) the ALJ failed to properly consider the combined effect of Flores's multiple impairments; (5) the ALJ improperly substituted his own opinion for that of Flores's doctors; (6) the ALJ failed in his duty to adequately develop the record; and (7) the ALJ erred posing a hypothetical question to the vocational expert that did not contain all of Flores's limitations. The court will discuss each in turn.

## I. Flores's testimony

Flores argues that the ALJ erred in not finding his testimony credible. The ALJ rejected

Flores's credibility regarding the severity of his conditions because of: (1) Flores's inconsistent statements; (2) evidence of exaggeration on psychological tests; and (3) Flores's minimal work record.

Absent evidence of malingering, an ALJ may reject the credibility of a claimant's testimony "by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996). The ALJ's discussion must be specific enough to allow the reviewing court to determine that the ALJ did not arbitrarily discredit the claimant's testimony. *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991). If the ALJ's credibility determination is supported by substantial evidence, the court may not second guess his decision. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

First, the Commissioner Argues that the ALJ properly rejected Flores's testimony because Flores made numerous inconsistent statements. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, *available at* 1996 WL 374186, at *5 (July 2, 1996). Flores argues that his statements were not actually inconsistent. For example, Flores claims that his statement about spending ninety percent of his waking hours on his feet is not inconsistent with saying that he was unable to stand up for more than fifteen minutes because he could also walk around intermittently and still be "on his feet." Flores also argues that the ALJ erred by stating that there was evidence of exaggeration on the psychological testing. "Possible exaggeration/amplification," he argues, "does not amount to definitive substantive evidence of exaggeration." Pl's Br. at 24. The court finds these arguments unpersuasive.

Flores is technically correct that if something is possible, it is not definitive. Circumstances

could exist whereby an individual could spend ninety percent of his time standing or walking, but only be able to stand for fifteen minutes without resting. However, the ALJ is charged with drawing reasonable inferences from the evidence presented. *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). The ALJ's inference that Mr. Flores's statements are inconsistent was reasonable and supported by substantial evidence in the record. Accordingly, this court upholds his finding.

Second, there is sufficient evidence on the record for the ALJ to conclude Flores exaggerated during psychological testing. For example, there were inconsistencies and anomalies in the psychological testing that did not lend themselves to Flores's case. The most significant example is Flores's poor performance on a memory compared with a performance within the normal range on a more difficult test of the same measure. Also, the record contains evidence of suboptimal effort on Flores's part – namely, that Flores refused to attempt the serial 7's test at one evaluation, but performed the serial 7's test almost perfectly at the other evaluation. Lastly, Dr. Kauder specifically noted in his report that there was evidence of "possible exaggeration." In light of this evidence, this court cannot say that the ALJ's inference that Flores may have been exaggerating was unreasonable.

Finally, Flores argues that the ALJ failed to explain how Flores's "minimal work history" supports the finding that his testimony is not credible. An ALJ may cite a claimant's poor work history to call into question the claimant's credibility. *Thomas*, 278 F.3d at 959. The persuasiveness of a poor work history, however, is limited. Poor work history, standing alone, is sometimes not sufficient to support finding the claimant incredible. *Floyd v. Astrue,* No. 08–1975–LAB (WVG), 2010 WL 2196120, at *8 (S.D.Cal. April 19, 2010).

Between 1994 and 2004, Flores worked in 13 different jobs. According to Flores, he was

terminated from nearly all of them due to his disability. Standing alone, this fact is insufficient to justify rejecting his credibility entirely. However, there still remain two clear and convincing reasons, discussed previously, to support the rejection of Flores's testimony. Because substantial evidence exists to support the ALJ's finding regarding Flores's credibility, the court finds that the ALJ did not err in this regard.

## II. Flores's Mother's Testimony

Flores also claims the ALJ erred in rejecting the credibility of Wetzel, Flores's mother. The ALJ, Flores argues, failed to take Wetzel's testimony into account when assessing the combined effect of Flores's several impairments. Flores contends the ALJ effectively rejected Wetzel's testimony and failed to provide a witness-specific reason for doing so.

An ALJ must consider all nonmedical evidence offered by individuals with knowledge of the claimant's functioning. *Schneider v. Comm'r of the Soc. Sec. Admin.,* 223 F.3d 968, 974-75 (9th Cir. 2000). Although an ALJ must consider all evidence in the record, he or she need only include in the narrative discussion a description of how the evidence supports each conclusion. SSR 96-8P, *available at* 1996 WL 374184, at *7 (July 02, 1996). In doing so, the ALJ must only explain why significant probative evidence was rejected. *Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir. 1984). When rejecting evidence, the ALJ must give "reasons germane to each witness whose testimony he rejects." *Smolen* 80 F.3d at 1288-89.

Despite Flores's assertions to the contrary, the ALJ did not reject Wetzel's credibility. The ALJ credited Wetzel's testimony insofar as she claimed Flores had anger problems and social anxiety. As a result of Wetzel's testimony, the hypothetical question the ALJ posed to the vocational expert limited Flores "to low stress jobs that do not involve interacting with the public and no close

association with coworkers." Tr. at 20.  Because the ALJ did not reject Wetzel's testimony, it was not error to omit reasons for rejecting her testimony.

III.  Dr. Kuzmitz's opinion

Flores argues the ALJ erred in giving no weight to the opinion of Dr. Kuzmitz, Flores's treating physician.  The ALJ gave no weight to Dr. Kuzmitz's opinion because it was based on Flores's subjective complaints instead of objective medical evidence.  Further, the ALJ rejected Kuzmitz's opinion on psychological matters because he is certified only in family medicine, and his opinion is inconsistent with two psychological evaluations administered by specialists appearing in the record.

The opinion of the treating physician should generally be given controlling weight if it is supported by the medical evidence and is not contradicted by other evidence on the record.  20 C.F.R. § 404.1527(d)(2) (2012); *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).  An ALJ may reject the uncontroverted opinion of a treating physician for "clear and convincing" reasons. *Carmickle v. Comm'r,* 533 F.3d 1155, 1164 (9th Cir. 2008).  When another physician's opinion contradicts the treating physician, however, the ALJ may reject the treating physician's opinion for "specific and legitimate reasons that are supported by substantial evidence on the record." *Id.,* quoting *Lester,* 81 F.3d at 830.

Flores argues that the court should require clear and convincing reasons for rejecting Dr. Kuzmitz's opinion, but the record makes it clear that his opinion is not uncontroverted.  Dr. Kuzmitz's opinion regarding Flores's back pain is contradicted by Dr. Zhou's report, and his opinion on Flores's mental problems is inconsistent with, if not wholly contradictory to, the opinion of Dr. Kauder.  Accordingly, the ALJ must provide only specific, legitimate reasons for rejecting Dr.

Kuzmitz's opinion.

The ALJ rejected Dr. Kuzmitz's opinion because it "is based on claimant['s] subjective complaints and no objective medical findings." Tr. at 18. An ALJ may reject a treating physician's opinion if it is largely based on the claimant's subjective reports and the ALJ has properly rejected the claimant's credibility. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). Further, "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Kuzmitz's reports are very brief, generally conclusory, and were based mostly on Flores's subjective reports. The fact that Dr. Kuzmitz relies heavily on Flores's subjective reports is important because, as previously discussed, the ALJ did not err in rejecting Flores's credibility. The three reports issued by Dr. Kuzmitz, when combined, are no more than a page and a half in length. Further, Dr. Kuzmitz did not conduct many objective medical tests. The only tests that Dr. Kuzmitz performed were the straight leg raise, knee and ankle reflexes, and ninety degree waist bend administered with regard to Flores's claims of back pain – all of which came out normal.

The ALJ also found Dr. Kuzmitz's opinion on Flores's psychological problems not credible because "Dr. Kuzmitz is certified only in [f]amily [m]edicine." Tr. at 18. Specialists' opinions are usually given more weight regarding his or her area of specialty. 20 C.F.R. § 404.1527(d)(5) (2012). However, primary care physicians' opinions regarding a patient's mental health are still entitled to weight regardless of whether that physician is a licensed mental health professional. *Sprague v. Bowden,* 812 F.2d 1226, 1231-32 (9th Cir. 1987).

Standing alone, the "family medicine" rationale would be insufficient to justify rejecting Dr. Kuzmitz's opinion. However, when combined with the ALJ's other justification – that Dr. Kuzmitz

based his opinion almost entirely on Flores's subjective reports with negligible objective medical findings to support those reports – the ALJ's reasoning is supported by the record. If Dr. Kuzmitz had performed a battery of tests and, from his expertise as a practitioner of family medicine, come to the conclusion that Flores suffered from various ailments, there would be no reason to question him. However, because contrary opinions from specialists exist on the record, and Dr. Kuzmitz performed few tests to arrive at his diagnostic opinion, the court upholds the ALJ's credibility finding regarding Dr. Kuzmitz.

IV.  The Combined Effect of Multiple Impairments

Next, Flores argues that the ALJ erred by failing to consider the combined effect of Flores's multiple impairments. At step two, the ALJ determined that Flores suffers from a learning disorder and depression.

It is difficult to determine exactly what Flores is arguing on this point. There is no evidence that the ALJ failed to consider the combined effect of the two named severe impairments. The only other meaning Flores's argument could have, then, is that the ALJ erred in allegedly rejecting the opinions of Flores, Dr. Kuzmitz, and Wetzel, and failed to consider the combined effects of other impairments.

To find that the ALJ erred by failing to acknowledge the existence of additional severe impairments, the court would also have to find that the ALJ erred in rejecting the opinions of Flores, Dr. Kuzmitz and Wetzel. As previously determined, the ALJ proffered specific, legitimate, clear and convincing reasons for rejecting the opinions of Flores and Dr. Kuzmitz and properly considered Wetzel's testimony.

Substantial evidence exists to support the ALJ's finding that Flores has only two severe

impairments, and there is no evidence on the record to suggest the ALJ failed to consider their combined effect. Accordingly, the ALJ did not err on this ground.

## V. ALJ Improperly Substituting his Opinion

Flores's fifth assignment of error is that the ALJ improperly substituted his own opinion for that of Flores's doctors and made his own independent medical findings and speculative inferences from the medical evidence. An ALJ may not rely on his own independent medical findings and speculative inferences from the medical evidence. *Embrey v. Bowden*, 849 F.2d 418, 421-22 (9th Cir. 1988). In *Benecke v. Barnhart*, the Ninth Circuit reversed the ALJ's decision and awarded benefits to a claimant who suffered from fibromyalgia. 379 F.3d 587, 596 (9th Cir. 2004). The ALJ failed to find the claimant credible and rejected the diagnosis of several specialists, mainly because the claimant was able to perform certain daily tasks. *Id.* at 594. The Ninth Circuit found that the record did not contain evidence to support the ALJ's determination that the claimant was not credible, noting, "[s]heer disbelief is no substitute for substantial evidence." *Id.* Ultimately, the court determined that due to the nature of fibromyalgia, it was error to require objective evidence of a condition that cannot be measured or diagnosed via medical testing. *Id.*

Here, the ALJ injected his own unsupported sentiment into the opinion when discussing Flores's alleged chronic back pain. The ALJ wrote:

> Pain of the severity alleged by claimant would be expected to require a stronger pain medication than aspirin. Also, claimant alleges severe pain for many years, but examinations have not noted any muscle atrophy that would be expected due to decreased use because of pain.

Tr. at 18. In this case, however, the ALJ did not base his disability determination solely on personal opinion. Unlike in *Beneke*, the ALJ sufficiently articulated specific legitimate reasons for rejecting

the Flores's testimony. Further, the ALJ did not base his findings solely on his personal opinion, but adequately supported them such that, even if the ALJ omitted the above excerpt from the opinion, his disability determination would still be supported by substantial evidence. The court finds that the ALJ did not err.

## VI. Failure to Develop the Record

Next, Flores argues that the ALJ failed in his duty to develop the record on the subjects of Flores's alleged ADHD and the car accident that Flores was involved in as a teenager. The Commissioner contends that the duty to develop the record did not arise in this case.

It is the claimant's duty to provide medical evidence showing the existence, severity, and duration of one or more impairments. 20 C.F.R. § 404.1512(c) (2012); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). An ALJ may not reject a claimant's claim for benefits simply because there is no objective evidence of a disability. *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). Instead, if the evidence on the record is ambiguous or insufficient for proper evaluation of the claim, the ALJ has a duty to develop the record further. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). An ALJ may satisfy this duty by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150. This duty is at its height when a claimant is not represented by counsel. *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992).

Flores first claims the ALJ failed in his duty to obtain the hospital records created after Flores was hit by a car in his youth. These records, Flores argues, will provide objective medical evidence of his back injury, which the ALJ found did not exist. The court is unpersuaded for three reasons.

First, the record is not sufficiently ambiguous or incomplete to trigger the ALJ's duty to develop the record. Second, there is already objective medical evidence regarding Flores's complaint of chronic back pain. Dr. Kuzmitz's notes from May 9, 2009 indicate a diagnosis of "Chronically sprained SI." Tr. at 307. Finally, the hospital records from the initial incident are not relevant to whether Flores is currently disabled. The immediate impressions of doctors following a serious physical injury do not indicate how that injury has, or has not, healed in the two decades since the injury occurred.

Next, Flores contends that the ALJ failed to recontact his physicians to clarify the ambiguity raised by "possible" diagnoses of ADHD and anxiety disorders. The relevant section of the Code of Federal Regulations has since been amended, but at the time of the administrative law hearing, an ALJ had a duty to recontact the plaintiff's medical sources to clarify and resolve conflicts in the evidence if there was insufficient evidence on the record to determine disability. 20 CFR § 404.1512(e) (2006) (current version at 20 C.F.R. § 404.1512(e) (2012)). Here, upon assessing the credibility of Flores's treating and non-treating sources, the ALJ correctly determined that there was substantial evidence to support a finding of no disability. Because substantial evidence existed for the ALJ to make a decision, the duty to recontact Flores's physicians was not triggered.

Finally, Flores argues that the ALJ failed in his duty to obtain the records of Dr. Sager, who referred Flores to Dr. Kauder for a neuropsychological evaluation. As stated before, the ALJ's duty to develop the record arises only when the existing evidence is ambiguous or insufficient to make a disability determination. That is not the case here. The ALJ's decision was supported by substantial evidence and this court will not second guess that decision. Accordingly, this court holds that the duty to more fully develop the record did not arise in this case and the ALJ did not fail in his duty to do so.

VII.  Incomplete Hypothetical Question

Finally, Flores argues that the ALJ erred in relying on the vocational expert's testimony because it was prompted by a hypothetical question that did not include all of Flores's functional limitations.  At step five, the ALJ typically elicits testimony from a vocational expert on what jobs in the national economy the claimant is capable of performing.   *Tackett v. Apfel,* 180 F.3d 1094, 1101 (9th Cir. 1999).  The ALJ does this by posing to the vocational expert a hypothetical question containing the functional limitations that apply to the claimant.  *Id.*  When posing this hypothetical, the ALJ must include all of the claimant's functional limitations. *Id.*  Failure by the ALJ to include an applicable limitation renders the vocational expert's testimony void of evidentiary value. *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984).

The ALJ posed a hypothetical question to the vocational expert containing the following non-exertional limitations: (1) low stress – no fast paced work; (2) does not involve customer service; and (3) no interacting with the public or working in close proximity to others.  Tr. at 55.  In response, the vocational expert testified that an individual with those three limitations could be successfully employed as a laundry worker, a cleaner (janitorial work), or a laundry sorter.  When the ALJ asked the vocational expert to credit Dr. Kuzmitz's opinion that Flores would miss more than four days per month, the vocational expert testified that an individual with that limitation would be disqualified from competitive employment.

Flores does not indicate what specific functional limitations the ALJ should have included.  Instead, Flores argues that if the opinion of Dr. Kuzmitz and the testimony of Flores and Wetzel were properly credited, the hypothetical would necessarily have included more functional limitations.  However, as previously explained, the ALJ did not err by rejecting the opinion of Dr. Kuzmitz and

the testimony of Flores.  Also, the third functional limitation– limiting interaction with the public and coworkers -- was included because of the credit the ALJ gave to Wetzel's testimony. Accordingly, the court finds that the ALJ did not err in relying on the testimony of the vocational expert.

## Conclusion

For the reasons stated, the decision of the Commissioner denying Flores's application for benefits should be AFFIRMED.

## Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **June 27, 2012**.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 12th day of June, 2012.

JOHN V. ACOSTA
United States Magistrate Judge